I should say cases we've taken their advisement we're now going to move to the third case of the morning case number 17-3493 United States v. Books and we are moving to the third case of the morning case number 17-3493 United States v. Books. May it please the court, my name is Michael Chandra. I'm counsel to Mr. Scott Books and the appeal of his jury trial. Mr. Books did not receive a fair trial due to the district court's orders regarding impeachment and the detained witnesses. The government's position in essence in this case asked this court to overrule Kastegar's rule on derivative evidence and to treat coarse confessions like violations of Miranda. But Kastegar and Chavez hold that criminal case for any purpose. I begin with the witness ruling. Here Mr. Books obtained evidence through an evidentiary hearing on July 13, 2017 that the coarse confession was disclosed to the two key ear and mannerism witnesses within 17 hours of the robbery. The court denied Mr. Books written oral objections to the testimony being allowed. He moved to strike both before pre-trial, three times at trial, and then also in his motion for a new trial. So one of the key questions here is whether or not the court's ruling should be subject to clear error. Whether this court should be held under a de novo standard. And we think there are five reasons why it should be reviewed de novo. The first is that the court, when it held the July 13th evidentiary hearing, it was a limited hearing. The hearing was limited to the question of whether a disclosure occurred, what the sequence of the disclosure was, and what the content of the disclosure was. The court itself, as well as the government through its objections, limited Mr. Books' ability to cross-examine the two identification witnesses as to the actual impact on their testimony, on their memories, on their attitudes towards Mr. Books. And those are key questions as to whether or not their testimony would be influenced by the coarse confession that was disclosed. Moreover, the court, while it ruled against Mr. Books on the witness ruling, further said that it admitted he would have problems cross-examining these witnesses. And that indicates that the court itself recognized there may be problems for the witnesses being influenced by the coerced confession's disclosure. The third is that there are material differences between the witnesses' pre-trial statements, statements right at the time, right after the robbery took place, that the police took, where they hedged their language, and their testimony at trial, where they said that Ms. Bateman, particularly, said that she was 110% sure that Mr. Books was the robber. Why wasn't the easiest way on cross-examination to not question in terms of the false statement that was given, but rather just on cross-examination to limit the questioning to, didn't the detective, Detective Parks, was it? Didn't Detective Parks inform you that why not just set the line of cross up that way? I don't see why the cross would have necessarily had to disclose the content of a confession. So the problem with that, Your Honor, is that Mr. Books has a right under the Confrontation Clause, this is a separate issue, to be able to put his full theory before the court, before the jury, as to whether there was, whether their that they had limited ability to see the robber, he was only there for 20 seconds, he was disguised, of course he did cross-examine him about that, but just as in Davis v. Alaska, he was not able to go into the question of, you had a a coarse confession disclosed to you, it was disclosed to you that they found instrumentalities, and isn't it the fact that you're not sure about it because you saw something, you had keen observations, because you cribbed it from what the government's police officer knew, and I think that that's a valid theory, it's a theory that could be put before the jury, and the jury, if they were to hear that, would have to seriously think about, was the identification reliable? But the problem, of course, is if you actually put that theory before the jury, it puts the coarse confession before the jury, and it destroys the defense. So I think that the issue in terms of Castigar here is related to the Confrontation Clause issue, because you can't backstop it through cross-examination, and the additional problem with cross-examination is that the problem wasn't Mr. Books' doing. The government was at, was the cause of all of these. The government coerced the confession, the government's agent disclosed the confession to the witnesses, the government called the witnesses as identification witnesses. In the court, the government officer ruled against Mr. Books' request to strike their testimony. The burden at that point should not fall on Mr. Books to have to remedy the situation. The government's the one that set up the Catch-22 situation, and the remedy that we recommend is that their testimony, their identification testimony be struck, and that he receive a new trial. Because of the disclosures to the witnesses, it wasn't a fair trial. They were able to get in through the witnesses information that should have been kept out. I'd like to move you to this issue of the waiver that the government leads its brief with. Yes, sir. Specifically, I'm referencing Record 72, pages 29 and 30, where Judge Mim is making his determination with regard to whether he's going to allow in certain questions, or questioning of the defendant. Is part of our analysis supposed to take into account either the decisive or conditional nature of Judge Mim's ruling? Your Honor, so there are a couple things. If you look at those pages, what's interesting about it is that the court says that, well, I could hold off on ruling on this, but I think that the defendant's going to want a firm answer on this so he can determine whether or not his client should testify. The prosecutor said, well, we could hold off on it, but the defense attorney said, yes, we want to hear about it because we need to make the determinations. We need to plot a strategy. This is about 12 days prior to when he could have taken it. That's correct. There's the issue of if it's conditional, whether Mr. ... The loose waiver rule, and I do apologize for it in the briefs. We refer to it at times as a justice disability or a brightness issue. It's not. Loose is a waiver rule, and it doesn't set itself in terms of case and controversy. It's more of bringing criminalist analysis forward. I've lost my mind. The Wilson case, Chief Judge Wood at the time, 2002. Yes, Your Honor. Seems to come up to this issue, and then she's got one paragraph where she's talking about, well, we need not necessarily reach the Fifth Amendment self-incrimination question. So I think that one of the issues with Wilson is that it's not even at the core of the Fifth Amendment's issue, and also there's no forced confession there. So in that case, it's not as if the defense being threatened with a forced confession, something that damaging coming through. And I think that if Wilson is extended to include this case, what you're in danger of is having this non-constitutional loose waiver rule swallow Castigar's mandate to this court that a forced confession cannot be used for any purpose in a criminal case. Are we correct to understand, then, that the two parties have differing views as to whether or not a Fifth Amendment self-incrimination ruling implicates physical evidence or not? Meaning the government's relying on the Key Lamar article, and you're saying no Castigar controls, and it excludes all physical evidence? I mean, as far as, unless the government's going to concede that, I think that we do disagree about that. I think that we're right about it. And I think that the Chavez plurality is pretty clear about it, and I think that it's a fair reading of Castigar that it's all evidence that should be excluded. Petain itself addresses this issue. I gave a detailed analysis of Petain on this in terms of physical evidence. I think that if the Fifth Amendment doesn't include physical evidence, you don't even get to Petain, because how can you be asking the question whether or not Miranda allows you to keep out physical evidence if a pure Fifth Amendment violation doesn't? It has to be the case that physical evidence also should be kept out for impeachment as well as for the case in chief. To go back to, just to tie off the point on the witness ruling, it's important that this court in Cotzee, which is a 2010 case, cites the D.C. Circuit's North opinion and states, I quote, Castigar is violated whenever the prosecution puts on a witness whose testimony is shaped directly or indirectly by compelled testimony, regardless of how or by whom he was exposed to that compelled testimony, and that's exactly what happened here. Even under a clear error standard, I think we win because there is new evidence that comes through in trial that the witnesses say that now we're 110% sure. That kind of quantification certainly wasn't there in the earlier statements that the witnesses gave to police. They hedged their language at the time. In fact, the government used the hedging language as a reason to try denying us the hearing on whether a disclosure occurred, and now the government's position, I suppose, is that no, in fact, they always were super sure about who the bank robber's identity was. I think that Castigar tells you that under this standard, well, it's important to point out for Castigar, if we get to the Castigar standard itself and we're not just kept back with clear error, you're looking at de novo, Castigar says that the heavy burden's on the government, not on the defendant, and they have to show that their source is an independent source, and it's usually by preponderance of the evidence. I don't think the government can shoulder that burden. I think that the differences, the material differences between the statements given to police at the beginning, it's way before trial, just after the robbery, and their statements at trial show you that there's a material difference, and because of that, you actually have to think about striking that testimony. Now, to cover the competition clause, I would like to... Can you address the argument you make about how the district court's ruling, which you've articulated, you know you believe was in error, how it affected your client's decision on whether to testify, and under what standard we should evaluate that? So it's a difficult question if you look at it under Luce, because Luce says that... I mean, under Luce, even if we made a proffer, Luce would say that, yeah, that doesn't really count, that's not enough. But I think that, Your Honor, our argument is that it should be looked at under Castigar. Castigar says that the burden's on them, and I think that particularly our citations to Garrity v. New Jersey should think about it in terms of this, that there's the course confession, they use it as a reason to tell the judge that our client's likely to perjure himself, and they obtain a ruling based upon submitting that evidence at the motion in limine. The impact on our client is immediate, that he can't evaluate the value of his testimony, and it gives him what Garrity v. New Jersey says, it puts him in a position of an antithesis of a free choice. Let's suppose you're right about that. Is it all subject at the end of the day to harmless error review? So certainly, Fifth Amendment is. So under Arizona v. Fulminante, Fulminante says that even New Jersey v. Portash is now under harmless error analysis. But I think that, given the number of errors that we're alleging here, even if we lose on harmless error analysis, that cumulative error analysis gives you another route to say that you should still care about that ruling. But independently of that, I think our Brooks v. Tennessee argument is a good argument that isn't answered adequately by the government. You're in your rebuttal time. I am, Your Honor. Link reserved. Very good. We'll now move to Mr. Knight. May it please the court, I submit that defendant is asking this court to lose the forest from because the evidence against him was strong. The jury that convicted him learned that, one, the morning of the robbery, he had texted an acquaintance, I wonder what bank I should rob today. Two, Mr. Brooks was in dire financial straits. Three, Mr. Brooks's car matched the robber's vehicle. And most importantly, Holly Bateman, the teller at the Land of Lincoln Credit Union, recognized Mr. Brooks the moment he walked in the door. They had interacted previously because Mr. Brooks had an account at the Land of Lincoln Credit Union. She knew his mannerisms. She knew his voice. And she knew he was the robber. She said as much the moment the robbery ended. She said she was 99% sure it was Scott Brooks. Now, Mr. Chandra spent the majority of his time trying to explain to Your Honors why Castigar should apply in this case. And at no point did he distinguish the authority that we cited from the Second Circuit, which described Castigar as strong medicine. And explained further that no court had actually taken Castigar's rule, which is obviously derived in the context of statutory immunity, and explicitly applied it in the context of coerced confessions. What's more, that authority from the Second Circuit explains that those prohibitions serve different policy interests, and that courts conflate them at their peril. More importantly, Your Honors, even under Castigar, the defendant loses. Castigar says that the question is whether the evidence at issue has a wholly independent basis from the ostensibly inappropriate government conduct. Judge Mim below held what the defendant in his opening brief characterized as a Castigar-like hearing. And then at the conclusion of that hearing, wherein he heard from both the tellers and Detective Parks, Judge Mim explicitly found that the identification testimony at issue had a, quote, truly independent basis. That satisfies Castigar's standard. We also heard Mr. Chandra conflate the standard of review in Castigar cases. The factual determination that Judge Mim made, that there is a truly independent basis for these identifications, is reviewed for clear error. Admittedly, the legal review is de novo, but there has not been, I have not uncovered a decision in my research, and Mr. Chandra has not pointed this court to a decision wherein a federal court of appeals investigated the factual finding in a Castigar hearing in a district court for anything other than clear error. That's a standard that, to the extent this court is inclined to apply Castigar, that should be applied in this case. I'm, I would draw the court's attention to the notion that Mr. Chandra also suggests that the admission of the teller's identification testimony violated the Confrontation Clause. But in his briefing, he acknowledges that Confrontation Clause cases, cases wherein courts have found violations of the Confrontation Clause fall into one of two buckets. There's either a hearsay problem, or there's a court-imposed limitation on cross-examination. That's not this case. There's no hearsay problem. The tellers were present and under oath, and there was no court-imposed limitation on cross-examination. Judge Scudder, to your point, the defendant was free to say, when the tellers were on the stand, ask them, was the defendant arrested? Did you learn that? There was ample room for the defendant to fashion a remedy in light of the district court's pretrial ruling regarding the admission of those identifications. And the defendant's decision to forego that opportunity is not error. And to your other point, Judge, that is all subject to harmless error analysis, and any putative error was harmless. We outlined earlier the litany of evidence that the jury could have based its, could have and did apparently base its verdict on in this case. I am struck by the position that Mr. Chandra apparently takes now regarding the use, the potential use of the objective evidence that was identified pursuant to Mr. Books' coerced confession. I think that in our briefs, we adequately explain why any argument regarding that pretrial ruling was waived and why the court should decline to address that unresolved issue of whether or not the Fifth Amendment actually reaches objective evidence in the first instance. Reserved by Judge Wood in the Wilson opinion? Your Honor, respectfully, I think I perhaps read Wilson a little more broadly than you do based on your questioning. I think that Wilson pretty clearly states that the loose rule applies to constitutional claims. I don't disagree with that. And I think that's for good reason. I think it's worth reminding ourselves of the concerns that animated the imposition of the loose rule in the first instance, right? We have no way of knowing, for example, why the defendant didn't actually take the stand. It might have been because of Judge Mims' conditional pretrial ruling regarding the use of this objective evidence. It might very well have also been because the defendant knew that he was likely to be impeached with his felony conviction. It might very well have been because the defendant decided that he didn't have a good answer if government counsel cross-examined him regarding his financial difficulties or the text message. Those, that uncertainty is a reason to not reach this issue. That uncertainty animated loose and it's present here in this constitutional claim. The Kastigar-like hearing, that occurs prior to Record 72, pages 29 and 30. So I get the sequence correct? Yes, Your Honor. And it's discussed again at Record 72. You know, the court is, there's a final discussion of the state of play, if my memory serves. But that's correct, that the identification issues were queued up prior to the issues with the potential impeachment of the defendant with the objective evidence. Your Honor, if I could pivot back to some of the other loose concerns that are present here, just to put a bow on that, there's also the issue that the Supreme Court identified in loose and then reiterated in Oler, that we don't know whether the government would have actually proceeded to impeach the defendant with the objective evidence that was discussed at that pretrial hearing. As the court explained again in loose and Oler, government counsel might have seen, after the conclusion of its case in chief, that the evidence came in cleanly, the jury understood the story they were trying to tell, and that discretion was the better part of valor. They might have very well decided that it would have been more prudent to keep their powder dry, not present that objective evidence to the defendant on the stand, and thereby avoid injecting an appealable issue into the case. That concern was present in loose, it's present here, and it justifies extending the loose rule to this case. Your Honor, I think it's also worth talking about briefly some of the issues that Mr. Chandra identified regarding the identification testimony, if I could pivot back to that briefly. Before we get there, is it the government's position with regard to the ruling, the 12 days before, that it was a conditional ruling? Yes, indeed. It's our position that not only was it a conditional ruling, it was the quintessential pretrial conditional ruling. It forecasts the district court's thinking on an issue, and it forestalls a definitive legal answer until the revealing light of trial. In our brief, we talked about Wilson v. Williams, a different Wilson case, wherein I believe the court was sitting on bank, and Judge Easterbrook explained that a good example, quote, of a conditional ruling is one in which the district court says that if a litigant takes the stand, he'll be subject to cross-examination in such and such a way. Until the testimony is adduced, until that litigant takes the stand, that pretrial ruling has no effect. And Your Honors, this is a far cry from even the causal standard that's outlined in Wilson v. Williams. Judge Mimbeleau didn't say, Mr. Books, if you take the stand, you are liable to be impeached with this objective evidence in such and such a way. Instead, what Judge Mimbeau said was, to the extent the government intends to proceed with this cross-examination, to the extent the government intends to utilize this objective evidence, should Mr. Books take the stand, it first needs to preview to me the questions that it intends to ask outside the presence of the jury. Judge Mimbeau explicitly said at that point, then, defendant would be invited to renew his specific objections, and the court would issue its definitive ruling. It doesn't get much more tentative and conditional than that. And indeed, Your Honors, I suggest that a ruling that recommends that might be a slight over-reading of it. Because what I read the district court to say is that I am going to allow some impeachment along those lines. The precise scope of it, you know, we're going to have to work out at trial if and when we get there. But I think what I'm concerned about is that the defendant sitting there hearing that would have thought, there is going to be some impeachment on the fruits issue allowed. Your Honor, I think my response to that is twofold. First, I would say that to over-read that ruling, that pretrial ruling, would do violence to the notion that any ruling on any motion in limine is always inherently tentative, and district courts remain free to change their minds for any reason or no reason at all as the evidence comes in or as they come to learn about new authority. District courts are never bound to pretrial and limine rulings that they make. And the second response to that is that to the extent that concern did animate the defendant's decision to not take a stand in this case, he was free to highlight that issue again during his colloquy with Judge Mim at the conclusion of the government's case in chief. As we recounted in our brief, Judge Mim went through the routine colloquy that district went and when the government's case in chief is closed, the defendant's about to start beginning to put on their case, and at that time the parties need to know whether or not the defendant's going to take the stand. Judge Mim asked him, Mr. Books, are you intending to take the stand in this case? If you do, you're subject to impeachment. This sort of impeachment was not specified during that colloquy, and to the extent Mr. Books or his trial counsel had any concerns regarding either the finality or the scope of the district court's pretrial ruling, he was free to raise those issues at that time. He did not. For that reason, we think that it's not an over-read of Judge Mim. And I think that colloquy should inform our read of that earlier exchange with Judge Mim prior to trial. Your Honors, I also would just briefly like to say a note about the procedural posture that distinguishes this case in Luce and Oler from the authority that defendants cited on the application of the Luce rule in Greer and Portash and Brooks. As we explained in our brief, Greer, Portash, Brooks all concerned state trial court defendants who had pretrial objections that were overruled, and then the state appellate courts ruled on the merits of those issues. Only because the state trial courts and the state appellate courts, more importantly, had reached the merits of those issues, did the federal courts in Wilson, I'm sorry, in Greer and Portash and Brooks, did they reach the merits of those same questions. That's not this case, right? Our case involves a federal trial court defendant such that it's more akin to Luce and to Oler. And in those cases, the question is whether the Constitution or federal law otherwise prohibits the imposition of the Luce waiver rules. And in this circuit under Wilson, it does not, even when the defendant's objection is of constitutional dimension. Your Honors, ultimately, the defendant has made a litany of constitutional arguments and I suggest that the court should resist his invitation into this thicket. I think that his first two arguments regarding the objective evidence can be rejected because they were waived. And I think that his third argument, that somehow the admission of the teller's testimony violated the self-incrimination clause, can be rejected because even under the standard that he proposes pursuant to Castigar, he loses. This court should decline to announce in the first instance whether Castigar applies to all coerced confessions because it doesn't need to decide that. Because even under the Castigar standard, Judge Mims finding that these identifications were truly independent controls. It satisfies Castigar. It's reviewed for clear error. And pursuant to that determination, the jury's conviction of Scott Book should be upheld. Subject to Your Honor's questions, I'm just trying to balance my time. Just one final, Ministerial. The Second Circuit authority you were referencing earlier was the Galani case? Yes, Your Honor. So Galani is the Southern District of New York and then Galani is discussed in the 2017 decision from the Second Circuit, wherein the Second Circuit took an analogous position to the one I'm advocating now. It declined to announce in the first instance whether or not Castigar's strong medicine should be applied to the context of coerced confessions. And that's the Allen case? Yes, Your Honor. And that's, I recognize that's obviously not controlling precedent for this court, but I think it should inform the analysis. It's telling, I think, Your Honors, that a question, Castigar's established precedent from the 1970s and we don't have a case on point applying it to the context of coerced confessions after a great many years. And I think it's telling that that precedent doesn't exist. I think that that absence should counsel prudence and I think the court should take the path of least resistance when it is confronted with these novel constitutional claims that the defendant is making.  Thank you. Mr. Chandler, rebuttal. Your Honor, I want to start with Galani. What's important there is that, again, at oral arguments, the government just leaves out Chavez, even though the Second Circuit cites Chavez as contrary authority. Chavez's plurality says, those subjected to coercive police interrogations have an automatic protection from the use of their involuntary statements or evidence derived from their statements in any subsequent criminal trial. This protection is, in fact, coextensive with the use and derivative use of immunity by Castigar when the government compels testimony from a reluctant witness. That's four members of the Supreme Court. And I would submit that four members of the Supreme Court are stronger authority than one district court judge. In terms of the clear error argument. The counsel still represents a minority, doesn't it? It is. So it's plurality. But the important thing there is that they are citing several cases summarizing it. So I think this court does need to take into account whether or not they're right on that. Beyond that, we also argued under Patain. The Patain also reaches the same sort of answer. There's three there and three on the dissent that agree on that. We don't count them that way. Four is still a minority in the Supreme Court. I understand, Your Honor. We urge three men, four in each trial, Your Honor. Thank you very much, Chandra. Thank you to both counsel. The case will be taken under advisement.